On May 10, 1905, the defendant wrote plaintiff as follows:

"On April 17th I gave you a ten-day option on square of ·ground belonging to me bounded. * * * As the time has long since passed, and you have not announced your intention of completing the transaction, you are hereby notified that the option is canceled."

The attorneys for the plaintiff replied that they expected to be ready to close the act of sale any day as soon as the certificates of incumbrances were received.

On May 17, 1905, the plaintiff made a notarial tender· of cash, notes, and the receipt of Ramsey & Roberts for $900, and called upon the defendant to clear the mortgage certificates, to sign the deed, and to receive the price. , Defendant refused to sign the act of sale.

The option of April 17, 1905, called for definite action one way or the other within ten days. On April 26, 1905, the plaintiff presented two notices of acceptance—one to Ramsey & Roberts, and, later, one to the defendant. · Neither notice specified an election as to the terms of sale, whether cash or credit, and the last one contained a condition that the title should be guaranteed by the Title & Mortgage Guarantee Company. This last notice was written by counsel for plaintiff, and was duly recorded as evidence of the exercise of the option within the limit of ten days.

There is no written evidence in the record to show that the defendant ever accepted this counter proposition.

Hence there was no meeting of minds on this proposed modification of the option. Plaintiff, we think, was bound within the ten days to notify the defendant that he would exercise the option of purchasing the property for cash or on the terms therein proposed, and to call upon the defendant to execute

a good title free of incumbrances. In the notice left with the agents there was no election of terms; but, such as it was, it was. supplanted by the later notice prepared by the attorneys for the plaintiff, containing the new condition already quoted, and no election. of terms. The ten days elapsed without the negotiations coming to any definite head, and we think that either party had the right to· recant.

The judgment is therefore reversed, and the suit is dismissed, with costs in both courts.

---

(46 South. 620.)

No. 16,900.

BARRELLI v. WEHRLI.

(April 27, 1908. On Rehearing, June 8, 1908.);

CONTRACT—RIGHT TO RECANT.

Where both parties intended that a building contract should be in writing, and the contractor submitted plans and specifications, accompanied by a formal contract in writing,. signed by himself and to be signed by the owner, and also by some one as surety for the contractor, and the owner never signed the instrument,. *held*, that the ·contract was inchoate and incomplete, and that either party had the right to recant before the instrument was executed.

(Syllabus by the Court.)

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; Thomas. Moore Burns, Judge.

Action by Percy S. Barrelli against Louis Wehrli. Judgment for defendant, and plaintiff appeals. Affirmed.

Ellis & White, for appellant. Miller &. Morgan, for appellee.

LAND, J. Plaintiff sued the defendant for· $9,465 damages, alleged to have been occasion-- ed by the breach of a verbal building contract· for the construction of a concrete block building in the town of Covington for the· price of $8,000.

The defense is that the parties intended to· enter into a written contract, and that the·

plaintiff tendered a contract in writing, which the defendant refused to sign.

The case was tried before a jury, which rendered a verdict in favor of the defendant. The trial judge overruled a motion for a new trial, and judgment was entered up pursuant to the verdict. Plaintiff has appealed.

The first question is whether the negotiations between the parties ever ripened into a contract. At the request of the defendant the plaintiff submitted plans and specifications for the building and a bid in the form of a written contract as follows to wit:

"Covington, La., April, 1907.

"The undersigned do hereby contract and agree to furnish all material and to do all work according to plans and specifications drawn by P. S. Barrelli for Mr. Louis Wehrli for the price and sum of $8,000. The said Louis Wehrli to furnish all the lumber used in the construction of the building, except what is used in making the window and door frames. All work must be done in good, true, workmanlike manner. Payments to be made, $1,000 when foundations are in, $2,000 when first-story joists are, * * * $2,000 when roof is on, $1,500 when floors are laid, and balance of $1,500 when the job is completed.

"[Signed]       Percy S. Barrelli.

"I hereby guarantee the faithful performance of the above contract made by P. S. Barrelli."

Signed in duplicate this ——— day of April, 1907, and witnessed.

This written contract was never signed by the defendant. The theory of the plaintiff's suit is that his bid, in the form of a written contract, was accepted verbally by the defendant on May 9, 1907, and that he was instructed to proceed with the work as rapidly as possible. Plaintiff prepared and signed the written contract, and presented it to the defendant for the purpose of having him also sign it.

Plaintiff in his testimony admits that he intended that the contract should be in writing. The defendant testified that such was the agreement between the parties. There was no parol contract, followed by a subsequent agreement that it should be reduced to writing, but a primary agreement that there should be a written contract. Plaintiff in the very beginning proffered a written agreement, signed by himself and to be signed by the defendant, and also by a surety for the faithful performance of the contract on the part of the plaintiff. There are so many reasons why building contracts of any importance should be in writing that it may be readily presumed that such was the intention of the parties in any given case.

The law applicable to the facts of this case is well settled, and is clearly stated in the case of Canal Co., Limited, v. Burgin, 106 La. 309, 30 South. 863. The agreement of the parties that the contract shall be reduced to writing is a part of the contract, and until fulfilled the contract is incomplete, and either party may recant. Id.

The whole contention of counsel for the plaintiff is founded on the proposition that there was a binding parol contract between the parties, and that its reduction to writing was merely to furnish evidence of the terms. The evidence shows beyond question that the first proposition looking to any definite agreement between the parties came from the plaintiff in the form of a written contract, signed by him and to be signed by the surety, and which he tendered to the defendant for his written acceptance; both parties intending that there should be a written contract.

In receding from the inchoate contract, the defendant exercised a legal right. Hence plaintiff has no right of action for damages for breach of contract.

Judgment affirmed.

### On Rehearing.

MONROE, J. It is ordered that the decree heretofore handed down be amended by reserving to the plaintiff the right to claim, in another action, compensation for the plans furnished by him, and, by condemning the defendant to pay the costs of the appeal.

Rehearing refused, June 8th, 1908.