295 So.2d 828 (1974)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
COVINGTON INTERSTATE, INC. (9818-A).
Consolidated with: State of Louisiana, through the Dept. of Highways
v.
George L. Wax (9818-B).
Nos. 9818-A, 9818-B.
Court of Appeal of Louisiana, First Circuit.
May 28, 1974.
Rehearing Denied July 3, 1974.
Writ Refused September 18, 1974.
*829 Alvin J. Liska, New Orleans, and Johnie E. Branch, Jr., Baton Rouge, for Highway Dept.
William J. Jones, Jr., Covington, for defendant-appellant Covington Interstate.
Alvin J. Liska and Jesse S. Guillot, New Orleans, for plaintiff-appellant.
William J. Jones, Jr., Covington, for defendant-appellant, Wax.
Before SARTAIN, BAILES and VERON, JJ.
VERON, Judge:
These expropriation cases, namely, State of Louisiana, Through the Department of Highways versus Covington Interstate, Inc., and State of Louisiana, Through the Department of Highways versus George L. Wax, were consolidated for purposes of trial. Separate opinions will be handed down by the Court in each case, and this decision will generally relate only to Covington Interstate, Inc.

I. DECISION OF TRIAL COURT
In each of these cases, the expropriation was made for the construction of a cloverleaf design interchange (sometimes called a "modified cloverleaf design") at the intersection of Interstate Highway 12 and U.S. Highway 190 in St. Tammany Parish. The expropriation of Covington Interstate's property took place on June 25, 1971, and the Highway Department deposited $12,915.00 in the Registry of the Court as compensation for the part taken. No money was deposited for severance damages.
After considering all of the evidence presented, the trial court awarded the defendant, Covington Interstate, Inc., $42,040.99 for the part taken, plus $27,560.51 *830 for severance damages, for a total award of $69,601.49, with credit for the sum deposited with the court by plaintiff, plus legal interest and costs.
From this judgment, both parties appealed. We affirm the award of the trial court.

II. FACTS
Before the taking, the defendant owned an unimproved tract of land in the Southeast quadrant of the interchange of Interstate Highway 12 and U.S. 190, containing 10.105 acres, or 440,174 square feet. The tract included 675.39 front feet on U.S. 190 and was generally rectangular in shape. Unlike the Wax tract in the companion case decided this day, the Covington Interstate tract was generally below road grade in elevation. Its highest point was at the South end, and the tract sloped generally downward from South to North.
The expropriated property consisted of 4.305 acres, or 187,526 square feet from the defendant's tract, and was taken entirely from the front side of defendant's land (side facing U.S. 190).
Covington Interstate, Inc., acquired the 10.105 acre tract involved herein from James R. Boudousquie, by act dated January 15, 1968, for the price of $100,000.00. The testimony showed that title was taken for this consideration in reliance on the "diamond design interchange" planned (but never constructed) by the Department of Highways for the intersection of Interstate Highway 12 and U.S. 190.
Under the "diamond design", the Covington Interstate tract would have been located approximately 800 feet south of the end of the access road in the Southeast quadrant of the interchange. All of the appraisers agreed that the originally planned "diamond design interchange", if constructed, would have greatly enhanced the value of the Covington Interstate tract.

III. DIAMOND DESIGN ENHANCEMENT
As in the companion case of State, Department of Highways v. Wax, 295 So.2d 833, decided this day, the plaintiff here contends that defendant Covington Interstate is not entitled to any compensation for enhancement of the value of the property as a result of the originally planned diamond design interchange.
For the reasons stated in the Wax case, and in our recent decision in State, Department of Highways v. Beatty, 288 So.2d 900 (La.App. 1 Cir. 1974), writ denied, we find no error in the trial court's decision that the defendant here is entitled to just compensation based on the value of the property taken in 1971 as enhanced by the originally planned diamond design interchange for which other property was expropriated in 1965.

IV. VALUE OF THE PART TAKEN
In an expropriation proceeding the landowner is entitled to compensation equivalent to the market value of the property taken according to the highest and best use of the property. The best evidence of the market value of property is recent sales of similar tracts in the same vicinity, commonly referred to as comparables. State, Department of Highways v. Kennedy, 193 So.2d 848 (La.App. 1 Cir. 1966), writ refused 250 La. 273, 195 So.2d 149 (1967).
The appraisers testifying for the Highway Department were Edward J. Deano and Henry B. Breeding, Jr. The appraisers testifying for defendant Covington Interstate were Frank J. Patecek and John Lejeune. Each of the expert appraisers concluded that the highest and best use of the defendant's property before the taking was for commercial purposes.
Deano's appraisal showed the unit land value of the Covington Interstate *831 tract to be 5.7¢ per square foot. Breeding's appraisal set the unit land value at 6.9¢ per square foot. Neither of the Department's appraisers included any enhancement in value to the Covington Interstate tract resulting from the 1965 expropriation for the originally planned diamond design interchange. Because these appraisals gave defendant no such credit, the trial court found them unacceptably low. We concur.
Patecek and Lejeune each submitted appraisals which set the unit land value for the part taken at 33¢ per square foot. One of the sales used by Patecek and Lejeune as a comparable was the sale of subject property from Boudousquie to Covington Interstate on January 15, 1968, for $100,000.00, or 22.7¢ per square foot. The only adjustment Patecek and Lejeune made to this figure was an adjustment for price increases since the time of that sale.
The trial court accepted the sale from Boudousquie to Covington Interstate as being the best evidence of the unit land value for the part taken, but rejected any time adjustment, specifically finding that:
"However, the court finds that there is no evidence in the record to support the time adjustment made by Patecek and Lejeune for the period between the date of defendant's acquisition (January 15, 1968) and the date of the taking (June 25, 1971). Time adjustments which might be relevant for other properties located on U.S. 190, are not relevant here due to the increase of the value of these properties out of proportion to other property because of the diamond design."
For the reasons stated in the companion Wax case, we find no manifest error in this decision of the trial court.

V. SEVERANCE DAMAGES
Each of the parties has appealed with respect to the amount of severance damages awarded by the trial court.
Defendant's only contention on this point is that the trial court erred in not considering time adjustments in determining the before value of the Covington Interstate tract. For the reasons noted above, we concur with the trial judge's opinion on this issue.
With respect to all other arguments raised on the issue of severance damages, our review of the jurisprudence indicates that the decision of the trial court is correct. We therefore cite his opinion here with approval:
"The tract remaining after the taking in this proceeding consists of 5.8 acres, or 252,648 square feet, and on the west it fronts 744.87 feet on the service or frontage road by a depth of 341.92 feet on its south line, and by a slightly lesser depth along its north line, which is Ponchitolawa Creek, by a distance in the rear along its last line of about 744 feet.
"Before the taking in this proceeding, the defendant's property had about 600 feet of frontage on U.S. 190 with direct access to the main thoroughfares of U.S. 190, the other 75 feet of frontage being non-access because of the bridge over Ponchitolawa Creek. After the taking in this proceeding, the defendant's remainder land fronts on a service or frontage road only, with no direct access to the main thoroughfares of U.S. 190. To reach the main thoroughfares of U.S. 190 from defendant's remainder land, it is necessary to travel from the remainder land on the service or frontage road about one mile South to the Fairway Drive Interchange. After the taking in this proceeding, a vehicle traveling North on U.S. 190 which reaches a point in front of the defendant's property can only reach defendant's property by traveling North about ¾ mile through the cloverleaf design interchange, then making a "U-turn", and then the vehicle must travel South on U.S. 190 about ¾ mile to a point in front of defendant's property, then the vehicle must continue *832 South on U.S. 190 about 1 mile to the Fairway Drive Interchange, and there enter upon the service or frontage road and travel Northward on the service or frontage road about 1 mile to the defendant's remainder.
"The service or frontage road on which defendant's remainder fronts will "dead end" at Ponchitolawa Subdivision, just North of defendant's remainder.
"Based on these facts, the defendant's appraisers concluded that the highest and best use of defendant's remainder land was reduced from commercial to residential, and this court concurs with that conclusion.
"Using after value comparables in a residential subdivision immediately to the rear of defendant's remainder, Patecek concluded that the value of defendant's land remaining after the taking was 15¢ per square foot, whereas Lejeune concluded that the after value of defendant's remainder was 12¢ per square foot.
"The court takes note of the voluntary sale by Baton Rouge Bank & Trust Company to the State Department of Highways of property directly across the highway from defendant's property. This sale was one of the Highway Department's acquisitions for the cloverleaf design interchange. The Baton Rouge Bank & Trust Company property was generally comparable to defendant's property, but in that sale, the State paid Baton Rouge Bank & Trust Company $93,641.00 in severance damages, whereas in this case the defendant was paid no severance damage. The Highway Department failed to offer any explanation in this proceeding as to why it paid Baton Rouge Bank & Trust Company $93,641.00 in severance damages but paid defendant no severance damage. In State Department of Highways vs. Cartledge [Cartlidge, La.App.] 258 So.2d 175, 178, Second Circuit (1972), the court said,
'Still, we feel as the trial judge did that certainly the voluntary sale to an expropriating authority would indicate that the property is worth no less than that paid voluntarily by the authority, for otherwise it would expropriate...'
"Many cases have held that voluntary sales to the expropriating authority are admissible in evidence. State Through Department of Highways vs. Dodge [La.App.] 168 So.2d 430 (1964), State Department of Highways vs. Bahry, [La.App.] 129 So.2d 903 (1961), Eminent Domain in Louisiana, Dakin and Klein, Page 202.
"The court concludes that the defendant is entitled to severance damages, and the court accepts Mr. Lejeune's valuation of the remainder after the taking in this proceeding, which is 12¢ per square foot for the 252.648 square foot remainder, for a total value of $30,318.00 for the remainder property after the taking.
"The computation of severance damages by this court is as follows:

Before value entire tract
 440,174 sq. ft. × 22.7 cents $99,919.50
Less value of part taken
 187,526 sq. ft. × 22.7 cents $42,040.99
 __________
Before value of remainder
 252,648 sq. ft. × 22.7 cents $57,878.51
Less after value of remainder
 252,648 sq. ft. × 12 cents $30,318.00
 __________
Severance damages $27,560.51"

For the foregoing reasons, the judgment of the trial court is affirmed.
All costs permitted by law incurred in the trial court are assessed against the plaintiff. The costs of this appeal are to be assessed one-half to the plaintiff to the extent permitted by law and the remaining one-half to the defendant.
Affirmed.